IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY TODD JOSEPH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-1563-N |
| | § | |
| THE CITY OF DALLAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant City of Dallas (the "City") and Defendants David Kunkle, Craig Miller, Nicholas Wingo, and Stacy Ward's (collectively, the "Individual Defendants") Motion for Summary Judgment [31]. For the reasons discussed below, the Court grants Defendants' motion.[1]

## I. BACKGROUND FACTS

Plaintiff Anthony Todd Joseph applied to become an officer in the Dallas Police Department ("DPD") in the spring of 2006. At the time, he was forty-nine years old. Joseph passed the first five of twelve total steps in the DPD application process but failed to successfully complete step six, the Applicant Interview Board ("AIB").[2] During his AIB,

---

[1]Because the Court does not rely on any of the evidence at issue, it need not reach Joseph's motion to strike [46]. Likewise, because the Court finds that summary judgment for Defendants is proper even if all of Joseph's evidence is assumed admissible, the Court need not reach the City and the Individual Defendants' motion to strike [43].

[2]Joseph successfully completed the preliminary interview, civil service test, physical fitness test, pre-polygraph examination, and polygraph examination. After failing the AIB,

which was conducted by DPD Officers Craig Miller, Nicholas Wingo, and Stacy Ward, Joseph was asked to complete a number of tasks including writing two essays, memorizing and repeating police procedure, and orally analyzing how to respond in hypothetical police scenarios. According to Joseph, he was able to correctly repeat the eight steps of police procedure that he was asked to memorize and responded imperfectly, but satisfactorily, to three police hypotheticals involving a hit-and-run auto accident, pursuit of a suspect in an "unfriendly" part of town, and a hostage situation involving a rape victim.

Following the interview, each of the three officers individually scored Joseph on a scale of 1 to 5 in 8 categories: (1) ability to follow directions; (2) adaptability/flexibility; (3) decision making/situational reasoning ability; (4) reaction to pressure; (5) interpersonal skills ability; (6) appearance/bearing; (7) oral communication skill; and (8) writing skill. A candidate's final, overall AIB score is calculated by averaging all twenty-four scores; a score of 3.00 or higher is considered passing. Collectively, Officers Miller, Wingo, and Ward gave Joseph a failing overall score of 2.74. Miller's eight scores for Joseph averaged to 3.00, Wingo's to 2.62, and Ward's to 2.62. All three officers gave Joseph passing scores for "appearance/bearing." However, all three failed Joseph in the "adaptability/flexibility" category, and Officers Wingo and Ward failed Joseph in the "decision making/situational reasoning ability" category. In Joseph's AIB file, the officers listed "unable to logically process information" as the "[r]eason" for Joseph's "[u]nacceptable" performance. App. to

Joseph was no longer considered a DPD officer candidate and was not permitted to complete the remaining six steps: background review, Final Review Board, offer of employment contract, psychological review, medical examination, and drug screening.

ORDER – PAGE 2

Def.'s Mot. Summ. J. 39.  The panel informed Joseph that he had failed the AIB and therefore would not be allowed to continue in to process toward becoming a DPD officer.

The next day, Joseph sent an email to the recruiting section of the DPD acknowledging that he made mistakes in his oral responses to the police scenarios posed by the AIB panel and asking for guidance as to the proper answers so that he could improve in anticipation of future interviews with other police departments.  The DPD never responded.

On June 29, 2006 Joseph filed a Charge of Discrimination with the Texas Workforce Commission and on August 29, 2006 filed suit alleging that the DPD did not hire him on the basis of his age.  As evidence of age discrimination, Joseph alleges that Officer Miller made age-related comments during the AIB, that DPD officers gave him unreasonably low scores for his "appearance/bearing" on the basis of his age, and that DPD hiring statistics for the period between August 2005 and August 2006 show that the DPD hired candidates who were under the age of forty at a higher rate than those who were over the age of forty.  The City and the Individuals Defendants deny that any officer on Joseph's panel made any age-related comments during Joseph's AIB and argue that Joseph was not hired for the legitimate, nondiscriminatory reason that he performed poorly during the interview and in doing so demonstrated an inability to logically respond to police scenarios.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, courts need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255-56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish an element essential to its case, the Court must grant summary judgment. *Celotex*, 477 U.S. at 322-23.

ORDER – PAGE 4

### III. TITLE VII DOES NOT PROVIDE A CAUSE OF ACTION FOR AGE DISCRIMINATION

The Court first grants the City and Individual Defendants' motion for summary judgment as to Joseph's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, because Title VII does not prohibit discrimination on the basis of age. By its own terms, Title VII only prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court noted in *Smith v. City of Jackson*, "[d]uring the deliberations that preceded the enactment of the Civil Rights Act of 1964, Congress considered and rejected proposed amendments that would have included older workers among the classes protected from employment discrimination." 544 U.S. 228, 232; *see also Piper v. Veneman*, 183 Fed. Appx. 407, 408 n.2 (5th Cir. 2006) ("[Plaintiff] bases her claims solely on title VII, which does not list age as a protected characteristic. Accordingly, we do not consider [Plaintiff's] allegations of age discrimination . . . ."). Accordingly, because Joseph does not allege discrimination on any basis other than age, the Court grants summary judgment in favor of the City and the Individual Defendants as to Joseph's Title VII claims.

### IV. THE ADEA PREEMPTS SECTION 1983 AGE DISCRIMINATION CLAIMS

The Court next grants the City and the Individual Defendants' motion for summary judgment as to Joseph's claims under 42 U.S.C. section 1983 because those claims are preempted by the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. "Congress intended the ADEA to be the exclusive remedy for age discrimination claims." *LaFleur v. Tex. Dept. of Health*, 126 F.3d 758, 760 (5th Cir. 1997) (quoting *Britt v. Grocers*

*Supply Co.*, 978 F.2d 1441, 1449 (5th Cir. 1984)).  Thus, "where a plaintiff asserts a claim of age discrimination under § 1983 and where the facts alleged will not independently support a § 1983 claim, the plaintiff's age discrimination claim is preempted by the ADEA." *LaFleur*, 126 F.3d at 760.  Accordingly, because Joseph does not allege discrimination on any basis other than age, the Court holds that Joseph's claims under section 1983 are preempted by the ADEA and therefore grants summary judgment on those claims in the City and the Individual Defendants' favor.

## V.  JOSEPH'S CLAIMS UNDER THE ADEA ALSO FAIL

Finally, the Court grants the City and the Individual Defendants' motion for summary judgment as to Joseph's claims under the ADEA.  Joseph's ADEA claims against the Individual Defendants fail because individual employees cannot be held liable for violations of the ADEA, and Joseph's claims against the City likewise fail because Joseph cannot raise a material issue of fact that the City's nondiscriminatory reason for not hiring Joseph is a mere pretext for discriminatory animus.

### A.  The ADEA Does Not Allow Claims Against Supervisory Employees in their Individual Capacities

The Court first grants summary judgment as to Joseph's ADEA claims against the Individual Defendants because the ADEA does not permit causes of action against employees in their individual capacities.  In *Stults v. Conoco, Inc.*, the Fifth Circuit held that "the ADEA provides no basis for individual liability for supervisory employees."  76 F.3d 651, 655 (5th Cir. 1996); *see also Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001).  The Court agreed with the Fourth and Ninth Circuits that to hold otherwise "would

place a heavy burden on those who routinely make personnel decisions," *Stults*, 76 F.3d at 655 (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)), and that, because the ADEA "protect[s] small entities with limited resources from liability" by excluding employers with fewer than twenty employees, "it is inconceivable that Congress intended to allow civil liability to run against individual employees," *Stults*, 76 F.3d at 655 (quoting *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)).  Accordingly, because Joseph may not bring claims against the Individual Defendants under the ADEA, the Court grants summary judgment on those claims in their favor.

### B.  Joseph Cannot Raise a Material Issue of Fact Contradicting the City's Legitimate Reason for Not Offering Him Employment

Joseph's final claim, his ADEA claim against the City, also fails because Joseph cannot raise a material issue of fact indicating that the City's legitimate, nondiscriminatory reason for not hiring him – his inability to correctly analyze hypothetical police scenarios before the AIB – is nothing more than pretext for discriminatory animus.

Under the ADEA, "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  A plaintiff can demonstrate age discrimination through either direct or circumstantial evidence. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).  Where, as here,[3] the

---

[3]Direct evidence is defined as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).  Here, Joseph offers no such evidence and does not argue that he can do so.

plaintiff relies on circumstantial evidence of discrimination, courts apply the three-part burden shirting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to analyze summary judgment challenges to ADEA claims.[4]  *See, e.g.*, *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) ("We employ the *McDonnell Douglas* burden-shifting framework when, as here, we review the grant of an employer's summary judgment motion to dismiss an employee's ADEA claims based on only circumstantial evidence."). Under this framework, the plaintiff must first establish a prima facie case of age discrimination.  *Id.*  If successfully stated, a prima facie case creates a rebuttable presumption that the employer engaged in unlawful discrimination.  *Id.*  Once the plaintiff states a prima facie case, the burden of production shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for taking the adverse employment action at issue.  *Id.* If the employer produces such a reason, the burden again falls on the plaintiff "to offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination . . . ; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's [age]." *Berquist v. Wash. Mut. Bank*, ___ F.3d ___, No. 05-20956, 2007 WL 2460350, at *11 (5th Cir. Aug. 31, 2007) (quoting *Rachid*, 376 F.3d at 312).

---

[4]While *McDonnell Douglas* involved claims of racial discrimination brought under Title VII, courts have exported the framework to a number of employment discrimination contexts including those falling under the ADEA.  *See Patrick v. Ridge*, 394 F.3d 311, 315 n.10 (5th Cir. 2004).

*1.  The City Has Produced a Legitimate, Nondiscriminatory Reason for Not Hiring Joseph*.  – Here, the Court finds that, even if Joseph can state a prima facie case for age discrimination, the City has successfully articulated a legitimate, nondiscriminatory reason for failing to offer him employment.  Accordingly, the Court assumes – without reaching the issue – that Joseph established a prima facie case and begins its analysis with the second step of the *McDonnell Douglas* framework.

To meet its burden of production, "an employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show that the reason is pretextual."  *Patrick*, 394 F.3d at 317 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)) (emphasis removed).  While an employer's "own vague and conclusional feeling about the employee" alone will not suffice, *Patrick*, 394 F.3d at 317 (holding that "a content-less and nonspecific statement, such as that the candidate is not 'sufficiently suited' for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnell Douglas*"), "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection" so long as "the employer articulates a clear and reasonably specific basis for its subjective assessment," *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).  Specifically, where, as here, the candidate's interview performance was subjectively scored on a numerical scale, the Fifth Circuit has suggested that, to meet its burden under *McDonnell Douglas*, a defendant employer must provide some "explanation [or] evidence

ORDER – PAGE 9

of how or why the interviewers arrived at [their] scores" such as notes or comments on the candidate's interview score sheets or deposition testimony to that effect by those who conducted the interview. *Id.* at 617.

Here, the City has produced a nondiscriminatory reason for its decision not to hire Joseph that is sufficiently supported by evidence in the record. The City contends that it did not hire Joseph because he received failing scores in his AIB. Although the DPD's AIB scoring system is subjective, evidence in the record sufficiently establishes that Officers Miller, Wingo, and Ward based their scores on Joseph's unsatisfactory responses to hypothetical police scenarios that displayed to the panel that Joseph lacked the ability to adequately process information in a logical manner. Specifically, the record contains an evaluation form from Joseph's AIB, which is signed by all three officers on his AIB panel, stating that Joseph's interview performance was unacceptable because he was "unable to logically process information." App. to Def.'s Mot. Summ. J. 39. In addition, the City and the Individual Defendants have produced affidavits from both interviewers who failed Joseph indicating that they gave Joseph low scores because he gave poor answers to the panel's hypothetical police scenarios and seemed unable to logically process information. *See* Aff. of Nicholas Wingo, App. to Def.'s Mot. Summ. J. 41 ("I felt that Mr. Joseph gave poor answers to the police scenarios and demonstrated an inability to logically process information."); Aff. of Stacy Ward, App. to Def.'s Mot. Summ. J. 45 ("[O]fficers Wingo, Miller, and I gave Mr. Joseph the tools necessary to analyze the police scenarios and provide logical answers to them. He did not do so."). In fact, Joseph himself admitted in his email

ORDER – PAGE 10

to the DPD that he made numerous mistakes in responding to all three police scenarios.  App. to Def.'s Mot. Summ. J. 30 (admitting that he made mistakes, including: "I didn't use flares or cones . . . . I made the mistake of leaving my patrol car without proper backup . . . . I was also counted off for putting the suspect in my car as it probably had a broken window . . . . I didn't understand the correct way to handle [the entire third scenario].").  Accordingly, the Court finds that the City's subjective, numerical interview scoring system provides a legitimate, nondiscriminatory reason for failing to hire Joseph because the scores Joseph received are sufficiently supported by evidence in the record.

   ***2. Joseph Cannot Show That the City's Reason Is Mere Pretext.*** – Because the City has produced a legitimate, nondiscriminatory reason for not hiring Joseph, Joseph bears the burden of raising a genuine issue of material fact disputing the City's reason.  However, Joseph has failed to meet this burden because the circumstantial evidence of age discrimination that he has produced fails to raise a genuine issue of material fact contradicting the City's nondiscriminatory reason for not hiring him.

   Joseph's evidence generally falls into four categories: (i) Joseph's contention that Officer Miller made comments indicative of discriminatory animus during the AIB; (ii) statistics showing that, between August 2005 and August 2006, applicants to the DPD over the age of forty were hired at a lower rate than those under forty; (iii) Joseph's suggestion that the City perversely uses AIB scores for "appearance/bearing" to discriminate against older DPD applicants; and (iv) Joseph's own subjective assertions that he is clearly qualified

ORDER – PAGE 11

for the position he was denied.  The Court concludes that none of Joseph's evidence gives rise to a genuine issue of material fact.

First, Joseph's allegations that Officer Miller made age-related remarks similar to "Come on, what's your forty-nine year old ass gonna do now?" and "Come on Mr. forty-niner, what's you gonna do now?" during the AIB – which the Court views as true for purposes of this motion – fail to raise a genuine issue of material fact when taken in context.  "[F]or comments in the workplace to provide sufficient evidence of discrimination, they must be (1) related to the protected class of which the plaintiff is a member; (2) proximate in time to the employment action; (3) made by an individual with authority over the employment decision at issue; and (4) *related to the employment decision at issue*."  *Manning v. Chevron Chem. Co. LLC*, 332 F.3d 874, 882 (5th Cir. 2003) (emphasis added).  Moreover, "[i]n order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision" to take the adverse employment action at issue.  *Simoneaux v. N.Y. Life Ins. Co.*, No. 02-30348, 2002 WL 31688900, at *3 (5th Cir. Oct. 29, 2002) (quoting *E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).

Here, Joseph's evidence regarding Officer Miller's alleged comments, especially when those comments are viewed in context, cannot be linked to the City's decision not to hire Joseph without unreasonable inference.  The Fifth Circuit has recognized that putative discriminatory comments must be viewed in the context in which they were made.  *See*

ORDER – PAGE 12

*Sandstad*, 309 F.3d at 900 (holding that the statement "you old guys don't always get it right" was not evidence of discriminatory animus when viewed in context). Here, Joseph's own affidavit makes it clear that portions of the AIB are intended to be stressful and intense so that panel members can score how candidates will respond to pressure and that it was in this very context that Officer Miller allegedly made these remarks in an attempt to pressure and fluster Joseph. *See, e.g.*, Aff. of Anthony Todd Joseph, App. to Pl.'s Resp. to Def.'s Mot. Summ. J. 47-48, ¶ 14 ("[In the second scenario] [a] person witnessing the event told me which apartment the suspect ran into. This is when Lt. Miller started yelling 'Come on, what are you going to do, come on, come on' . . . . Lt. Miller then said, 'Oh, we have a lawyer here, oh Mr. Lawyer, Mr. Paralegal' . . . ."), ¶ 16 ("[In the third scenario] [t]his person said he would kill the woman if I didn't put my gun down. At that point Lt. Miller yelled, 'Come on, what's your forty-nine (49) year old ass gonna do now?' . . . . Lt. Miller said, 'Bang bang she's dead, you're dead' . . . . *He kept trying to rattle and hurry me* . . . . Lt. Miller started screaming that I was going to get the woman killed." (emphasis added)), ¶ 17 ("Lt. Miller asked me what I thought about the process. I replied that the interview was fairly intense."); *see also* Applicant Interview Rating Form, App. to Def.'s Mot. Summ. J. 36 ("Dimension . . . 4. Reaction to Pressure"). Moreover, it is undisputed that Miller actually gave Joseph passing scores for his performance during the AIB and, in particular, gave Joseph a high score for reacting well under pressure.[5] The Court finds that Joseph has produced no

---

[5]Joseph makes much of the fact that Miller gave Joseph an overall score of 3.00 which is the minimum score for passing the AIB. However, Joseph's own exhibits show that DPD candidates frequently pass the AIB with two or even three panel members scoring the

evidence indicating that the alleged statements were indicative of any discriminatory animus on the part of Miller, affected Miller's or the other officers' scoring of Joseph's performance, or were even critical of Joseph's age or abilities when placed in context.  Indeed, his allegations concerning the statements are, if anything, to the contrary.  Accordingly, the Court finds that, without more, these alleged comments do not raise a genuine issue of material fact.

Second, Joseph's statistical evidence likewise fails to raise a genuine issue of material fact because the evidence lacks any factual support and therefore cannot be linked to discriminatory animus without unreasonable inference.  Joseph presents evidence showing that, between August 2005 and August 2006, DPD officer candidates under the age of forty were approximately three times more likely to be hired by the DPD than candidates over the age of forty.[6]  However, "statistical presentations that do not include analyses of the facts surrounding the circumstances of the individual employees at issue are impotent, without more, to rebut an employer's articulated, nondiscriminatory reason for terminating an

---

candidate at exactly 3.00.  *See* App. to Pl.'s Mot. Summ. J. 53 (showing that applicant Gregorich passed the AIB with all three officers scoring him at 3.00), 57 (showing that applicant Brechue passed with two officers scoring him at 3.00), 61 (showing that applicant Friedrichs passed with two officers scoring him at 3.00), 67 (showing that applicant Hamm passed with two officers scoring him at 3.00).  Thus, it would be unreasonable for the Court to assume that Miller passed Joseph with a score of 3.00 knowing that it would likely lead to Joseph's failure.

[6]Specifically, Joseph presents evidence that between August 2005 and August 2006, the DPD hired 9 of 200 applicants over the age of 40 and 197 of 1680 applicants under the age of 40.  Thus, during that year, applicants over the age of 40 were hired 4.5% of the time, while applicants under the age of 40 were hired at a rate of approximately 11.73%.

ORDER – PAGE 14

employee." *Baker v. Randstad N. Am., LP*, 151 Fed. Appx. 314, 321 (5th Cir. 2005) (internal quotation marks omitted); *see Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006) (holding that statistics are "not probative of discriminatory intent" when they are "devoid of context"); *see also Rachid*, 376 F.3d at 312 ("[D]isparate impact claims are not cognizable under the ADEA . . . . [because] [29 U.S.C. s]ection 623(f)(1) provides that it is not unlawful to make employment decisions based on 'reasonable factors *other than age* . . . .'" (emphasis in original)).  Joseph's evidence only shows that, over the course of a single year, applicants over the age of forty were hired a lower rate than those under forty.  Joseph offers no evidence suggesting that intentional age discrimination, rather than some other of a potentially limitless number of possible confounding variables, accounts for this discrepancy.  As a result, it would be mere speculation to consider these statistics as evidence of discriminatory animus.

Further, even if the Court found that Joseph's statistics showed a general age-based animus toward older candidates, Joseph is unable to raise a genuine issue of material fact linking that animus to the City's specific decision to not offer *him* employment with the DPD.  Even when a court infers general animus from statistics, the Fifth Circuit has held that plaintiffs must raise a "reasonable inference" connecting that animus to the unique adverse employment action at issue in their own case.  *See Sandstad*, 309 F.3d at 900-01 (holding that, even if the Court inferred age-based animus from the fact that two senior managers had been terminated since the inception of a new promotion program, the plaintiff could not raise a genuine fact issue because he could not link that animus to his own termination).  Here,

Joseph merely presents bare bones statistics without offering any evidence specifically connecting them to age-based animus, let alone his own failed application. Accordingly, the Court finds that Joseph's statistical evidence fails to raise a genuine issue of material fact.

Third, the Court finds that Joseph's allegations that the City uses AIB "appearance/bearing" scores to discriminate against older candidates are mere speculation and conjecture and therefore insufficient to give rise to a genuine issue of material fact. Joseph makes this assertion without providing a single "appearance/bearing" score, besides his own, for a candidate that he can show is (or who even appears from their photo to be) over the age of forty. As a result, it is impossible to make any conclusion about relative scores between the relevant age groups based on Joseph's evidence. Moreover, Joseph takes for granted that this category scores candidates solely on the time and money that they spent on grooming and clothing. Joseph's evidence, however, demonstrates just the opposite. It shows, if anything, only that scores for "appearance/bearing" fluctuated greatly among those candidates under the age of forty irrespective of clothing type and haircut. Accordingly, the Court concludes that this evidence fails to give rise to a genuine issue of material fact.

Finally, Joseph's remaining evidence fails because it consists of little more than Joseph's own subjective belief that he should have been hired. It is well established that "[a]n individual's subjective belief that he is more qualified for the position is insufficient to establish a material question of fact." *Solorzano v. Shell Chem. Co.*, No. 00-31191, 2001 WL 564154, at *7 (5th Cir. May 18, 2001) (per curiam); *see also Sandstad*, 309 F.3d at 899 ("Merely disputing [the defendant employer's] assessment of [plaintiff's] performance will

ORDER – PAGE 16

not create an issue of fact."). Joseph makes much of his allegedly superior qualifications, including his military service, college GPA, and high score on the civil service exam. However, the record demonstrates, and Joseph offers no evidence to dispute, that this information was not even available to the AIB panel that failed Joseph and thus is irrelevant to their scores. Aff. of Craig Miller, App. to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 1-2, ¶ 3 ("When we interviewed Mr. Joseph, we were not aware of his civil service scores or college grade point average. Applicant Interview Boards are not aware of those credentials for any applicants and do not consider them when interviewing applicants and making decisions."). Even if this was not the case, evidence of superior qualifications is not probative of discriminatory animus unless the plaintiff's qualifications are so superior "that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Eberle v. Gonzales*, No. 06-50954, 2007 WL 1455928, at *7 (5th Cir. May 18, 2007) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 279 (5th Cir. 1999)). Here, the Court cannot say that Joseph's qualifications are so superior to those of the candidates hired as to raise a genuine issue of material fact.

In any event, "[t]he ADEA was not . . . intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from those decisions which are unlawfully motivated." *Denman v. Cerliano*, 193 Fed. Appx. 375, 378 (5th Cir. 2006) (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)). Accordingly, because the Court

ORDER – PAGE 17

finds that Joseph has failed to raise a genuine issue of material fact to dispute the City's

legitimate, nondiscriminatory reason for rejecting Joseph's application, the Court grant the

City's motion for summary judgment as to Joseph's ADEA claim.

## VI. CONCLUSION

For the reasons presented above, the Court grants the City and the Individual

Defendants' motion for summary judgment as to all of Joseph's claims and enters judgment

in their favor.

Signed November 6, 2007.

David C. Godbey
United States District Judge